UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DWAYNE ALMOND,

      Plaintiff,

                                        Case No. 08-C-546

WARDEN WILLIAM POLLARD,
JEANANNE GREENWOOD, NURSE HEINS,
SECURITY DIRECTOR ERICKSEN,
LT. SWIEKATOWSKI, and NURSE SHARHZON,

      Defendants.

## ORDER DENYING MOTION FOR IMMEDIATE RELIEF

Plaintiff Dwayne Almond, a pro se § 1983 litigant incarcerated at the Green Bay Correctional Institution ("GBCI"), has moved for an order that he be taken to the "Emergency Hospital Before I Die." (Doc. # 57.) Almond claims his "conditions/injuries" have worsened and that he "sees [sic] blood comes from inside of my body" and that he "can use the toilet comfortable [sic] without burning out my penis or booty." (Doc. # 57 at 2.) Almond also expresses a fear for his life and physical well-being at the hands of GBCI personnel whom he claims are threatening him. (Doc. # 57 at 6.) The Defendants responded to Almond's motion and opposed injunctive relief. For the reasons stated below, Almond's motion is denied.

The Seventh Circuit has articulated the standards applicable in determining whether injunctive relief is appropriate. The moving party must demonstrate that:

> [I]t has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest.

*St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001)). The first question for my consideration is whether Almond has demonstrated that he is reasonably likely to succeed on the merits. As I conclude that he has not, I will deny his request for relief.

In response to Almond's motion, defendants provided affidavits detailing the medical attention Almond has received. The affidavit of Jeananne Zwiers, the Nursing Supervisor for the Health Services Unit ("HSU") at Green Bay Correctional Institution ("GBCI"), where Almond is serving his sentence, reveals that on December 22, 2008, nurse Jean Lutsey was notified at home that Almond complained to correctional staff that he was having a kidney problem and experiencing hip and back pain due to "cord twisting in his testicles to the point of feeling lightheaded." (Aff. of Jeananne Zwiers, ¶ 5.) The correctional officer reported to Nurse Lutsey that Almond did not appear to be in acute distress, that he observed no diaphoresis, his color appeared normal, and he was standing at the cell door talking without apparent difficulty. (Id.) Nurse Lutsey instructed the officer to obtain a urine sample from Almond, offer him Tylenol or Ibuprofen if needed, and call back if his complaints continued. The urine was tested the following morning and found to be normal. (*Id.*)

The following day, Almond was seen by Nurse Garland at Sick Call for complaints of swelling to his fingers, low back and abdomen pain. His vital signs were normal, and no objective findings supported his claims of swelling to his fingers. Abdominal assessment was also normal. When advised of the findings, Almond claimed the nurse was in on it with the others.

On January 11, 2009, Almond was seen by Nurse Komorowske at the request of the HSU Manager to follow on claims received by the Wisconsin Department of Justice. Almond's vital

2

signs were normal, his gait steady, and he was laughing and joking with staff. Almond asked about getting and extra mattress as he has in the past. Nurse Komorowske did a back assessment which was within normal limits and reviewed the normal back X-Rays which have been done in the past. (*Id.*, ¶ 7.)

Nurse Lutesy saw Almond on January 12, 2009, and obtained samples of his blood, urine and stool. Vital signs were normal, and Almond was again laughing and joking with staff. He appeared healthy and in no distress. He initially refuse lab work but decided to cooperate when told "the feds" would not help him if he did not. (*Id.* ¶ 8.) Dr. Richard Heidorn, a physician employed by GBCI, examined Almond at the same time and found him to be in no immediate danger and that his medical needs were being appropriately addressed. From his review of his records, Almond was most recently seen for a skin condition and was in no acute distress. (Aff. of Richard Heidorn, M.D., ¶ 5-6.)

Based upon this evidence before me, it appears that Almond has been provided medical care and various medical professionals concluded that he was in no acute distress. Indeed, it appears that he is fabricating complaints in order to either harass the staff or obtain special benefits. I conclude that Almond is not reasonably likely to succeed in his claim for relief under these conditions. Although Almond may disagree with the care he is receiving, he cannot ultimately prevail on his claim for relief and his motion is therefore **DENIED.**

**SO ORDERED** this ___30th___ day of January, 2009.

   s/ William C. Griesbach
William C. Griesbach
United States District Judge

3

Case 1:08-cv-00546-WCG   Filed 02/02/09   Page 3 of 3   Document 65