UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DWAYNE ALMOND,

    Plaintiff,

Case No. 08-C-0546

WARDEN WILLIAM POLLARD,
JEANANNE GREENWOOD,
NURSE HEINS, SECURITY DIRECTOR ERICKSEN,
LT. SWIEKATOWSKI, and NURSE SHARHZON,

    Defendants.

## DECISION AND ORDER

Pro se Plaintiff Dwayne Almond is proceeding *in forma pauperis* on a civil rights complaint under 42 U.S.C. § 1983 against the Defendants, who include current and former administrators and medical staff at Green Bay Correctional Institution ("GBCI"). In a decision and order dated July 24, 2008, I allowed Almond to proceed on an Eighth Amendment claim regarding denial of medical care. Now before me are the Defendants' motions for summary judgment and a stay of discovery, as well as a number of motions presented by Almond.

## BACKGROUND

On March 31, 2006, Almond was transferred from Columbia Correctional Institution to GBCI. (Affidavit of Jeananne Zwiers [Zwiers Aff.], ¶ 11.) The Health Services Unit ("HSU") at GBCI was aware, from a review of Almond's medical records, that he had a history of self-reported chronic back pain dating back to the early 1990s. (Zwiers Aff., ¶¶ 10, 12.) Since his arrival at

GBCI, Almond has been seen several times by HSU nurses and the HSU physician for complaints of back pain. (Zwiers Aff., ¶ 13.) X-rays were taken on April 6, 2006 and November 15, 2007; the results on both dates showed normal findings. (Zwiers Aff., ¶¶ 14, 15.)

On May 9, 2008, Almond submitted a health services request for an appointment for emergency medical care for his serious chronic pain in his lower back, neck, arms, legs, and stomach, among other things. (Zwiers Aff., ¶ 16.) HSU staff responded to Almond that he was scheduled to be seen. *Id.* Almond submitted another health services request on May 12, 2008, again stating that he needed emergency medical care due to a fall that injured his neck. (Zwiers Aff., ¶ 17.) HSU staff responded to Almond that he had an appointment scheduled for the next day. *Id.*

Almond saw Nurse Shari Heinz on May 13, 2008, for his complaints of low back and neck pain. (Zwiers Aff., ¶ 18; Affidavit of Shari Heinz, R.N. [Heinz Aff.], ¶ 8.) Almond reported that he had slipped in his cell five days prior to the appointment and pulled his back and neck. *Id.* It was noted in Almond's medical records that he was walking without difficulty, that his vital signs were normal, there were no abnormalities palpated and he was taking ibuprofen, 600 mg at a time, as needed. *Id.* Nurse Heinz instructed Almond to continue taking the ibuprofen. (Zwiers Aff., ¶ 19; Heinz Aff., ¶ 9.) She also provided him with ice for a week and an analgesic rub as needed. *Id.* She instructed Almond to follow up with HSU if his pain continued. *Id.*

Almond has not been seen by HSU for back pain since May 13, 2008. (Zwiers Aff., ¶ 20; Heinz Aff., ¶ 10.) Nor has he requested to be seen by HSU for back pain since that date. *Id.* Between May 13, 2008 and July 14, 2008, Almond submitted thirteen health services requests, all

2

of which dealt with medication refills. (Zwiers Aff., ¶ 21; Heinz Aff., ¶ 11.) None of the requests mention any complaint of back pain; nor do they request to be seen by HSU staff. *Id.*

While housed at GBCI, Almond has never had any medical restrictions due to chronic back pain (*e.g.*, no kneeling or no sitting). (Zwiers Aff., ¶ 22; Heinz Aff., ¶ 12.) If a medical restriction had been in place, it would have been ordered by the physician and a medical restriction sheet would have been issued to Almond's housing unit, where it would have been carried out in accordance with security policies and procedures. (Zwiers Aff., ¶ 23; Heinz Aff., ¶ 13.) Neither Zwiers nor Heinz have any recollection of or documentation regarding a request by Almond for an appointment with the physician. (Zwiers Aff., ¶ 24; Heinz Aff., ¶ 14.)

Almond was never on any type of restriction that would have required him to kneel during the time he alleges he fell, on or about May 8, 2008. (Affidavit of William Swiekatowski [Swiekatowski Aff.], ¶ 4.) A restriction requiring an inmate to kneel would only be imposed on inmates being housed in the segregation unit. (Swiekatowski Aff., ¶ 5.) Almond has not been housed in the segregation unit since August 2007. (Swiekatowski Aff., ¶¶ 6-7.)

**DISCUSSION**

**I. Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

3

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* Once the moving party has demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show that there is a genuine dispute as to the material facts of the case. *Id.* at 323-24. The responding party "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

**II. Analysis**

**A. Eighth Amendment**

The defendants submit that Almond cannot meet his burden of proof in this case because it is impossible for Almond to show that the defendants knew of and disregarded an excessive risk to his health or safety. The defendants argue that the medical evidence overwhelmingly supports their assertion that Almond was seen numerous times regarding his complaints of back pain and received adequate treatment. Moreover, Almond was advised at his May 13, 2008, appointment that he should follow up as needed regarding his back pain. After that appointment, Almond did not follow up with HSU regarding his back pain. Instead, he filed an inmate complaint and, ultimately, this lawsuit.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*,

4

241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman*, 241 F.3d at 845 (citing *Farmer*, 511 U.S. at 840-42).

Because the evidence at summary judgment is to be viewed in the light most favorable to the non-moving party (here, the plaintiff), I will assume that Almond's back pain in May 2008 constituted a serious medical need. Nevertheless, nothing in Almond's medical record suggests deliberate indifference to his complaints of back pain. He submitted a health services request, and an appointment was scheduled. Before the appointment, Almond submitted another health services request. He was seen the next day, as scheduled. Nurse Heinz evaluated Almond's neck and back and prescribed continued use of ibuprofen, ice packs, and an analgesic. She also invited Almond to alert HSU if he needed a follow up visit. However, Almond did not submit any additional health services requests regarding his back pain. Instead, he filed inmate complaints and this lawsuit. Although Almond disputes the defendants' assertion that he did not request medical care for his

5

back after May 13, 2008, the evidence he cites in support of his position consists of request made in September of 2008, several months after he filed his lawsuit. (Doc. # 48, Almond Aff. ¶¶ 3-4.) Requests for medical care made after he filed his complaint are irrelevant to the claim that the defendants were deliberately indifferent to his condition before the complaint was filed.

Almond focuses his response to the defendants' motion on his insistence that he was examined by a Nurse Sharhzon on May 13, 2008, rather than Nurse Shari Heinz, R.N. The defendants argue that no "Nurse Sharhzon" could be identified or located. Additionally, Nurse Heinz has affirmed that she conducted the examination of Almond on May 13, 2008. (Heinz Aff., ¶¶ 8-9.) It thus appears that Almond misinterpreted his medical records and/or Nurse Heinz' name tag. Nurse Heinz signed the May 13, 2008 progress note as S. Heinz, R.N. It is possible that Almond believes "Sharhzon" is what the signature says. The evidence presented by the defendants, including the progress notes and the affidavits of Zwiers and Heinz, shows that it was Nurse Heinz who examined Almond on May 13, 2008. Almond's assertion, even sworn, to the contrary is not sufficient to overcome the defendants' showing and create a question of fact regarding who treated him on that date. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007).

Almond also argues that the defendants' motion for summary judgment is based on lies and suggests they are covering up the wrongdoing of denying him treatment on May 13, 2008. Almond argues that he had an untreated infection. He also wanted to be seen by a doctor (rather than a

6

nurse) and to have x-rays done for his neck and lower back injury. Nevertheless, Almond was seen by Nurse Heinz and treated for his neck and back injury.

Almond further contends that it is a lie that he sought only prescription refills from May 13, 2008 until July 14, 2008. Yet he provided no documentation of health service requests during that time in which he asked to be seen by HSU staff. Moreover, it is also noteworthy that during the pendency of this matter, Almond filed a motion for immediate relief requesting transfer to an emergency room because of severe, life-threatening medical difficulties, including bleeding and severe burning upon urination and/or bowel movements. (Doc. # 57.) Given the serious allegations, the Court directed the defendants to respond, with they did in the form of affidavits from nurses and a physician, all of whom reported that Almond had no abnormal symptoms suggesting he was in distress or in urgent need of medical care. In fact, Almond was observed laughing and joking with staff. Based on the evidence submitted, it appeared that Almond was fabricating complaints in order to either harass staff or obtain special benefits. (Doc. # 65.) Although this doesn't mean that Almond's complaints in this case were fabricated, it does suggest a pattern.

In any event, even viewed in the light most favorable to Almond, his complaints are simply a disagreement with the medical treatment he received. Disagreement with medical professionals about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

To the extent that Almond argues that security personnel were deliberately indifferent to his serious medical need, his claims also fail. The defendants have shown that Almond was not on any

7

type of restriction at the time he fell that would have required him to kneel. Such restrictions would only occur in segregation and, prior to filing this complaint, Almond had not been housed in the segregation unit since August 2007.

**III. Additional Motions**

My resolution of the defendants' motion for summary judgment renders moot all of the other motions pending in this case. They will be denied as such.

**CONCLUSION**

**THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that Almond's motion (Docket # 50) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Almond's motion to forward copies (Docket # 52) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Almond's motion for an answer on plaintiff's petition for reconsideration (Docket # 69) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendants' motion to stay discovery (Docket # 71) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Almond's motion seeking that defendants be held criminally liable for their misconduct and for the Court to schedule a telephone conference (Docket # 75) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Almond's motion to "show the crooked or the wrongdoing of the defendants and their attorney, Joseph T. Ganzer" and request that the Court schedule a telephone conference (Docket # 76) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Almond's motion "Demanding Adjudged and Rendered a Order to Dismiss Defendants' Case in Favor in Plaintiffs" (Docket # 82 ) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Almond's motion "to have plaintiff removed out of GBCI-Hands" (Docket # 81) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing the plaintiff's claims and this action.

Dated this   26th   day of March, 2009.

s/ William C. Griesbach
William C. Griesbach
U.S. District Judge
